**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 0:14-CV-60629-ROSENBERG/BRANNON**

BROWN JORDAN INTERNATIONAL
INC., BJI HOLDINGS, LLC, BROWN
JORDAN SERVICES & BROWN
JORDAN COMPANY,

       Plaintiffs,

v.

CHRISTOPHER CARMICLE,

       Defendant,

_____/

**CASE NO. 0:14-CV-61415-ROSENBERG/BRANNON**

CHRISTOPHER CARMICLE,

       Plaintiff,

v.

BJI HOLDINGS, LLC, et al.,

       Defendants.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART**
**BROWN JORDAN'S MOTION FOR SUMMARY JUDGMENT**

       This cause is before the Court on Brown Jordan's Motion for Summary Judgment in case

0:14-CV-61415 at docket entry 86. The Motion has been fully briefed. The Court has reviewed

the Motion and the court file and is otherwise fully advised in the premises. For the reasons set

forth below, the Motion is granted as to Carmicle's wrongful termination claim, Count I, because

Carmicle cannot state a claim for wrongful termination. The Motion is granted as to Count II

because Brown Jordan's Code of Conduct cannot be construed as a contract. The Motion is

granted as to Count V because there is no evidence to support an essential element of Carmicle's Computer Fraud and Abuse Act claim: that Brown Jordan accessed his computer. The Motion is granted as to Count VI because Carmicle fails to identify the alleged statements, constituting defamation or false light, with sufficient particularity.  The Motion is granted as to Counts VIII-X because there is no evidence Carmicle received a direct injury independent of any injury to the corporation.   However, the Motion is denied as to Counts III, IV and XI because there is a material dispute of fact as to why Carmicle's employment was terminated.

## I.      BACKGROUND

Brown Jordan International, Inc. is a corporation owned by BJI Holdings, LLC.  DE 71 ¶ 3.  Brown Jordan International, Inc. owns and oversees Brown Jordan Company and Brown Jordan Services (all Brown Jordan parties are collectively referred to as "Brown Jordan" when distinction is unnecessary).  *Id.*  Christopher Carmicle ("Carmicle") worked for Brown Jordan from at least 2005 until his employment was terminated in February of 2014.  *Id.* ¶¶ 6, 12.  At the time his employment was terminated, Carmicle oversaw Brown Jordan Company and Brown Jordan Services.  *Id.* ¶ 1.  The crux of the dispute before the Court is whether Carmicle was terminated in retaliation for providing certain disclosures to the Brown Jordan Board of Directors.  Those disclosures concerned the alleged wrongdoing of certain Brown Jordan corporate officers.

## II.      APPLICABLE LAW

Brown Jordan argues that it is entitled to summary judgment as to Count I, a wrongful termination claim, in Carmicle's operative complaint in case 14-61415.  Brown Jordan argues

that Florida law applies to this claim.  Carmicle argues that Kentucky law applies.  Neither party

contests the law applicable to any other claim.[1]

     As an initial matter, Brown Jordan argues that Carmicle previously agreed to Florida law

by virtue of a choice-of-law provision in an employment agreement he signed.  The relevant

provision reads as follows:

> This Agreement shall be governed and construed in accordance with the laws of
> the State of Florida without regard to conflict of laws principles thereof and all
> questions concerning the validity and construction hereof shall be determined in
> accordance with the laws of said state.

DE 88-3 at 14.[2]  Carmicle's wrongful termination claim does not concern the "validity" or

"construction" of his employment agreement.  The gravamen of Carmicle's wrongful termination

claim is that he was fired for exercising his legal rights and for reporting wrongdoing.  Neither

contention is encompassed within the scope of the choice-of-law clause in the employment

agreement.  Instead, this choice-of-law clause resembles the clause in *Green Leaf Nursery v. E.I.*

*DuPont De Nemours & Co.*, 341 F.3d 1292, 1300 (11th Cir. 2003), which read as follows: "[t]his

release shall be governed and construed in accordance with the laws of the State of Delaware."

In analyzing the clause in *Green Leaf*, the Eleventh Circuit concluded: "The effect of this clause

is narrow in that only the release itself is to be construed in accordance with the laws of the State

of Delaware.  The clause does not refer to related tort claims or to any and all claims or disputes

arising out of the settlement or arising out of the relationship of the parties.  This type of narrow

choice-of-law clause calls for the application of the selected law to determine only the scope and

---

[1] Even if Carmicle contests the law applicable to his remaining claims, the applicable law for those claims is the same under Kentucky and Florida law, as discussed more fully, *infra*.  *See James River Ins. Co. v. Med Waste Mgmt., LLC*, 46 F. Supp. 3d 1350, 1355 (S.D. Fla. 2014) ("[W]here the laws of [ ] two jurisdictions would produce the same result on the particular issue presented, there is a 'false conflict,' and the Court should avoid the choice-of-law question.").

[2] The Court's citations to the record utilize the pagination in the court file.

effect of the release." *Id.* The Court concludes that, like *Green Leaf*, the choice-of-law provision in this case is narrow and does not encompass Carmicle's wrongful termination claim. A conflict of laws analysis is therefore necessary.

A federal court sitting in diversity applies the conflict of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Before beginning a conflict of law analysis, a court should determine whether a conflict of laws truly exists. *Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1234-35 (11th Cir. 1995). No conflict of laws exists when the asserted conflict is a false conflict. *Tune v. Philip Morris, Inc.*, 766 So. 2d 350, 352 (Fla. Dist. Ct. App. 2000). A false conflict arises when: (1) the laws of the different sovereigns are the same, (2) the laws of the different sovereigns are different but produce the same outcome under the facts of the case, or (3) when the policies of one sovereign would be furthered by the application of its laws while the policy of the other sovereign would not be advanced by the application of its laws. *Id.*

Here, the claim at issue is a wrongful termination claim. "Florida does not recognize a common law cause of action for wrongful or retaliatory discharge, and there is no specific statutory authority granting a case of action for wrongful or retaliatory discharge." *Saavedra v. USF Bd. of Trs.*, No. 8:10-CV-1935, 2011 WL 1742018, at *4 (M.D. Fla. May 6, 2011) (referencing a movant's summarization of Florida law and adopting it); *see also Wiggins v. S. Mgmt. Corp.*, 629 So. 2d 1022, 1025 n.4 (1993) ("Florida does not recognize an exception to the at-will doctrine in the form of a common-law tort for retaliatory discharge from employment."). By contrast, Kentucky does recognize (to an extent) a claim for wrongful termination. *See Firestone Textile Co. Div. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1983). The Court therefore

4

concludes that the laws of the respective states are not the same.

With respect to whether "the laws of the different sovereigns are different but produce the same outcome under the facts of the case," this is less clear. Carmicle argues in his response to Brown Jordan's Motion for Summary Judgment that his wrongful termination claim (which is clearly styled as a wrongful termination claim) should be construed under Florida law as a claim brought under the Florida Whistleblower Act.[3] This presents a difficult question because there is an apparent conflict between the Florida Second District Court of Appeal and the Florida Fourth District Court of Appeal regarding the proper standard to evaluate the sufficiency of a Florida Whistleblower Act claim. *Compare Kearns v. Farmer Acquisition Co.*, 157 So. 3d 458, 465 (Fla. Dist. Ct. App. 2015), *with Aery v. Wallace Lincoln-Mercury, LLC*, 118 So. 3d 904, 916 (Fla. Dist. Ct. App. 2013) (conflicting as to whether an employee must merely have a "good faith" basis to believe that a law has been violated to state a claim under the Florida Whistleblower Act). These state court appellate decisions make it difficult for the Court to ascertain whether Carmicle has properly pled a claim under the Florida Whistleblower Act, notwithstanding the fact that his claim is neither styled nor brought under that law. In an abundance of caution, the Court assumes that the laws of the respective sovereigns would *not* result in the same outcome, as applied to the facts of this case, and therefore a conflict of law *does* exist between the state of Kentucky and the state of Florida.[4] Accordingly, the Court applies the conflict of law rules of the forum state, the state of Florida. *Klaxon*, 313 U.S. at 496.

---

[3] Carmicle makes no argument of note that his wrongful termination claim should be construed as a whistleblower claim under Kentucky law.

[4] With respect to whether the policies of one sovereign would be furthered by the application of its laws while the policy of the other sovereign would not be advanced by the application of its laws, the Court concludes that both Kentucky and Florida do have policy interests that are implicated in this case insofar as Carmicle worked in Kentucky but contracted for that work with a Florida corporation. Accordingly, the availability (or lack thereof) of a claim for wrongful termination is a matter in which both states have a policy interest.

Florida utilizes the "significant relationship" test for conflicts of law premised upon tort claims. *See Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980). Under Florida law, a court should consider the following:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>> (a) the place where the injury occurred,
>> (b) the place where the conduct causing the injury occurred,
>> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
>> (d) the place where the relationship, if any, between the parties is centered. These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*Id.*; Restatement (Second) of Conflict of Laws § 145 (1971).

The presumption of the significant relationship test is that generally the law of the forum where the injury occurred determines the substantive issues unless another state has a more compelling interest. *See Bishop*, 389 So. 2d at 1001. Applying the foregoing factors, the place of the alleged injury is in Kentucky—the state in which Carmicle worked and was fired. *See* 14-60629, DE 20-1 at 3. The place where the conduct causing the injury occurred is less clear. Brown Jordan International, Inc. is based in Florida and this is where at least two Defendants reside. *See id.* at 1-3. However, Carmicle was fired in Kentucky and this is where Carmicle was escorted off of the premises of the facility in which he worked. *See id.*

With respect to the locations where the parties are based, both Kentucky and Florida are implicated. The two companies that Carmicle oversaw have their principle place of business in Kentucky, but the company Carmicle worked for is principally based in Florida. *Id.* at 1-2.

Finally, whether Florida or Kentucky is the place where the relationship between the parties was centered is less than clear. Ultimately, however, it is unnecessary to determine where the parties' relationship was centered because the Court concludes that the state with the most significant relationship to Carmicle's wrongful termination claim is the state in which he was terminated— Kentucky. After considering all of the relevant factors, the Court concludes that no state other than Kentucky has a more compelling interest in Carmicle's claim and no state other than Kentucky can be said to have a more significant relationship with the events and parties in this case. The Court therefore applies the laws of Kentucky to Carmicle's wrongful termination claim, Count I.

### III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of a factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). A dispute is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S. at 247-48). A fact is material if "it would affect the outcome of the suit under the governing law." *Id.* (citing *Anderson*, 477 U.S. at 247-48).

In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). The Court does not weigh conflicting

evidence.  *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007).  Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment.  *See id.*

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact.  *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008).  Once the moving party satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'"  *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  Instead, "[t]he non-moving party must make a sufficient showing on each essential element of the case for which he has the burden of proof."  *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  Accordingly, the non-moving party must produce evidence, going beyond the pleadings, to show that a reasonable jury could find in favor of that party.  *See Shiver*, 549 F.3d at 1343.

## IV.    ANALYSIS AND CONCLUSION

### A.  Count I: Wrongful Termination

Brown Jordan argues that it is entitled to summary judgment as to Count I, a wrongful termination claim, in Carmicle's operative complaint in case 14-61415.  In Kentucky, an at-will employee can be discharged "for good cause, no cause, or for a cause that some might view as morally indefensible."  *Firestone Textile Co. Div. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1983).  Unlike Florida, however, Kentucky recognizes a narrow exception to this general principle.  *See id.*  This exception is that a discharge may not be "contrary to a fundamental and well-defined public policy as evidenced by existing law."  *Id.*  In applying this narrow exception, two different kinds of circumstances apply.  *See Grzyb v. Evans*, 700 S.W.2d 399, 402 (Ky. 1985).  First, a

discharge is actionable when "the reason for the discharge was the employee's exercise of a right conferred by a well-established legislative enactment." *Id.* Carmicle has properly pled a wrongful termination claim under this provision. Second, a discharge is actionable when "the alleged reason for the discharge of the employee was the failure or refusal to violate a law in the course of employment." *Id.* Carmicle has not properly pled a wrongful termination claim under this provision. Carmicle's wrongful termination is entirely premised upon the contention that he provided information on improper activities and, after that information was provided, he was terminated. To the extent Carmicle now seeks to amend his complaint to add allegations that he was terminated for refusing to violate a law, that request is denied in light of the fact that the amended pleadings deadline in this case was May 11, 2015, discovery closed in this case on August 16, 2015, and trial is seven days hence.

Turning to the merits of what Carmicle has properly pled, Carmicle essentially argues that he was terminated after providing information that corporate officers violated or were violating their fiduciary duties to Brown Jordan. Carmicle asserts that his claim is premised upon 271B.8-420(1), Kentucky Statutes, which reads as follows:

> An officer[5] with discretionary authority shall discharge his duties under that authority:
>
> (a) In good faith;
> (b) On an informed basis; and
> (c) In a manner he honestly believes to be in the best interests of the corporation.

However, "not all statutes (or constitutional provisions) will support a [wrongful discharge] claim. Many statutes simply regulate conduct between private individuals, or impose requirements whose fulfillment does not implicate public policy concerns." *Green v. Ralee*

---

[5] Carmicle also cites to a Kentucky statute that imposes similar duties upon corporate directors, KRS 271B.8-300.

9

*Eng'g Co.*, 19 Cal. 4th 66, 75 (Cal. 1998). The Court therefore examines the statute cited by Carmicle to determine whether "the reason for [Carmicle's] discharge was [his] exercise of a right conferred by a well-established legislative enactment." *Grzyb*, 700 S.W.2d at 402. Carmicle's wrongful termination claim fails under Kentucky law for three reasons.

First, 271B.8-420(1) does not confer a right on employees—it imposes a duty upon corporate officers. Carmicle's discharge did not stem from an "exercise of a right conferred by a well-established legislative enactment," and his claim therefore must fail. *Id.*

Second, 271B.8-420(1) does not implicate public policy in the context of a wrongful termination claim. A wrongful termination claim must be premised upon a law that "provid[es] statutory protection to [a] worker in his *employment situation*." *See Shrout v. The TFE Grp.*, 161 S.W.3d 351, 354 (Ky. Ct. App. 2005) (emphasis added). Instead of providing protection to a worker in his employment situation, 271B.8-420(1) regulates internal corporate governance. Carmicle makes no argument of merit that internal corporate governance statutes exhibit a "well-defined public policy" in the context of employment law. Moreover, the statute does not protect the public at large because the duties owed under the statute are clearly intended to benefit private stockholders. *See King v. Driscoll*, 638 N.E.2d 488, 493 (Mass. 1994) ("[I]nternal administration, policy, functioning, and other matters of an organization cannot be the basis for a public policy [because those statutes relate to an] internal company matter. . . . [I]t is not necessarily true that the existence of a statute relating to a particular matter is by itself a pronouncement of public policy that will protect, in every instance, an employee from termination."). A wrongful termination claim in Kentucky is the exception, not the rule. This exception is "narrow" and, in light of this standard the Court cannot conclude, upon the facts of

this case, that 271B.8-420(1) applies to the exceptions delineated in *Firestone* and *Grzyb*. *See*

*Firestone*, 666 S.W.3d at 731.

Third and finally, Brown Jordan has provided evidence that Carmicle was not a corporate

officer.  It appears that Carmicle's title of president was an honorary one only, and that his status

was that of a managerial employee:

> [From the deposition of Mr. Frederick King, Brown Jordan general counsel]:
> Brown Jordan Company and Brown Jordan Services are separate subsidiaries
> owned by Brown Jordan International. Gene Moriarty is the elected president of
> both of those subsidiaries. Chris Carmicle was permitted to use the president's
> title, outward facing to customers and the public, but he is not the elected
> president of either subsidiary.

DE 77-2 at 11.  Carmicle has provided no notable evidence to the contrary:

> Q: All right. Now if I understand correctly, you were not an elected corporate
> officer of Brown Jordan International, Inc.?
>
> A: [Mr. Carmicle] I don't know if I was or was not.
>
> Q: You were never advised that you were an elected officer of Brown Jordan
> International, Inc., fair to say?
>
> A. I don't recall.
>
> . . .
>
> Q: Were you aware that Mr. Moriarty, Mr. Tortorici and Mr. King were the
> elected officers of each of the five business units?
>
> A: No.
>
> Q: Did you at any point in time ever believe that you were an elected officer for
> Brown Jordan Services or Brown Jordan Company?
>
> A: I don't know the legal designation of an elected officer or not. I believe that
> was a -- I was an officer, yes.
>
> Q: Did you ever see any, any resolution or, or formal document appointing you as
> such?

11

A: I believe I answered that earlier. I did not remember seeing that.

DE 88-4 at 6, 11-12.  Except for his "belief," Carmicle has provided no evidence that he was a corporate officer.  As cited above, 271B.8-420(1) applies to corporate officers.  Carmicle provides no relevant authority for the specific proposition that a managerial employee (albeit one with extensive authority) falls within the scope of 271B.8-420(1).  Accordingly, Carmicle has not shown that he "engaged in statutorily protected activity" and his claim fails.  *See Bishop v. Manpower, Inc.*, 211 S.W.3d 71, 75 (Ky. Ct. App. 2006).

Juxtaposed to the foregoing, Carmicle principally relies upon cases where employees were fired for refusing to disobey the law.  *See* DE 106 at 13-14.  Yet, Carmicle has not pled that he was terminated for refusing to violate the law.  What Carmicle has pled is that he was terminated in response to his disclosures to the board:

> In discharging Carmicle in retaliation for his communications and disclosures to the Board, Defendants violated the law. Defendants wrongfully terminated Carmicle in response to his disclosure to the Board of illegal, unethical, and immoral conduct on the part of Defendants. Such disclosures are protected by law from retribution, making Defendants' actions in terminating Carmicle actionable.

DE 71 ¶ 66.  Carmicle has provided no legal authority to establish that his disclosures equated to the exercise of a statutory *right*.  *Firestone* does not grant employees blanket immunity from termination when they disclose information about their superiors; *Firestone* created a cause of action for employees who were fired for exercising clearly established legal rights or who were fired for refusing to violate the law.  Neither circumstance applies here.  Accordingly, Brown Jordan's Motion for Summary Judgment is **GRANTED** as to Count I.

## B.  Count II: Wrongful Discharge in Violation of the Parties' Code of Conduct

In Count II, Carmicle alleges that Brown Jordan's "Code of Conduct constitutes an

express and/or implied contract between the parties, protecting Carmicle against reprisals such as the one he suffered here." DE 71 at ¶ 71. Yet Brown Jordan's Company Handbook, which contains that Code of Conduct, provides: "[N]o statement in this Handbook is intended as a contractual commitment or obligation of the Company to any employee." DE 88-34 at 6. Under either Kentucky or Florida law, courts will not construe a company manual as an employment contract where the manual expressly states that it is not a contract. *See Furtula v. Univ. of Kentucky*, 438 S.W.3d 303, 309 (Ky. 2014) ("[W]hen the recipient of a statement is informed that the maker of the statement does not intend to enter into a contract, as occurred in this case with the University's clear statement that the handbook was not a contract, the formation of a contract will not be implied."); *Quaker Oats Co. v. Jewell*, 818 So. 2d 574, 576-77 (Fla. Dist. Ct. App. 2002) ("It is well established Florida law that policy statements contained in employment manuals do not give rise to enforceable contract rights in Florida unless they contain specific language which expresses the parties' explicit mutual agreement that the manual constitutes a separate employment contract."); *LaRocca v. Xerox Corp*, 587 F. Supp. 1002, 1004 (S.D. Fla. 1984) (finding two versions of employer manual did not create an employment contract under Florida law, because the first "does not say whether the policy manual itself constituted an independent contract" and the second "specifically states that it is not to constitute an independent employment contract"). Accordingly, Brown Jordan's Motion for Summary Judgment is **GRANTED** as to Count II.

**C.  Count III: Wrongful Discharge in Breach of Defendants' Fraudulent Misrepresentation to Protect Carmicle from Retaliation**

In Count III, Carmicle alleges he "was promised and assured by the Board, directly and through its legal representative, that he would not be terminated or otherwise suffer retaliation for

disclosing the illegal or unethical conduct by Defendants," and "[i]n permitting Defendants to terminate Carmicle, the Board breached the above promise to Carmicle." DE 71 at ¶¶ 76-77. There is testimony in the record that, after Carmicle submitted his letter to the Board, Board members and their counsel promised Carmicle that he would not be terminated in retaliation for reporting the alleged misconduct of the Board members. *See* DE 88-4 at 367-69, 371-73; DE 88-17 at 104-05.

Brown Jordan argues it is entitled to summary judgment on Count III because the promise made to Carmicle was not false. *See* DE 86 at 23-24; DE 88 at ¶ 18. Namely, Brown Jordan argues that Carmicle was not terminated due to retaliation but rather due to his misuse of company email, etc. *Id.* Carmicle argues that he was terminated in retaliation for his disclosures to the Brown Jordan Board of Directors. Because the Court must view all facts in the record in the light most favorable to Carmicle on Brown Jordan's Motion for Summary Judgment, the Court concludes that there is a dispute of material fact as to whether Carmicle was terminated for the *method* of his disclosures (accessing the e-mail of his superiors), together with certain other factors, or for the *content* of his disclosures (pertaining to alleged wrongdoing), particularly in light of the proximity of time between Carmicle's disclosures and his termination—which was less than a month. DE 88 at ¶¶ 17, 54. Accordingly, Brown Jordan is not entitled to summary judgment on Count III on this basis.

Secondly, Brown Jordan argues that Carmicle has failed to show he relied on this representation because, at the time, Carmicle had already reported the alleged misconduct. *See* DE 86 at 24. Carmicle responds, however, that he relied on the misrepresentation in other ways, such as by fully cooperating with the ensuing investigation. *See* DE 106 at 18. Summary judgment is therefore inappropriate on this basis, particularly given the dispute of fact regarding the reason for Carmicle's termination.

Finally, Brown Jordan argues that any reliance by Carmicle was unreasonable as a matter of law because he was an employee-at-will.  *See* DE 86 at 24.  The cases Brown Jordan cites for this proposition are distinguishable because they considered whether a prospective employee's reliance on a promise of at-will employment was reasonable for purposes of a promissory estoppel claim.  *See Escarra v. Regions Bank*, 353 F. App'x 401 (11th Cir. 2009); *Leonardi v. City of Hollywood*, 715 So. 2d 1007 (Fla. Dist. Ct. App. 1998).  In contrast, "[c]laims alleging fraudulent misrepresentation have been permitted to proceed where the plaintiff is an at-will employee."  *Paine v. Domino's Pizza, LLC*, No. 10-23158-CIV, 2011 WL 1102788, at *4 (S.D. Fla. Mar. 24, 2011).[6]  Accordingly, Brown Jordan's Motion for Summary Judgment is **DENIED** as to Count III.

### D.  Counts IV and XI: Breach of Contract

Count IV is for breach of contract, based on Brown Jordan refusing to compensate Carmicle for his ownership interest in BJI under the terms of a profit-sharing agreement.  *See* DE 71 at ¶¶ 81-86.  Count XI is also for breach of contract, based on Brown Jordan's failure to give Carmicle severance pay.  *See* DE 71 at ¶¶ 121-23.  Brown Jordan argues Carmicle is not entitled to these types of compensation under the agreements because he was terminated "for cause" under the applicable contracts.  *See* DE 86 at 24-25.  As noted *supra*, there is a dispute of material fact in the record as to the reason for Carmicle's termination.  Accordingly, Brown Jordan's Motion for Summary Judgment is **DENIED** as to Counts IV and XI.

### E.  Count V: Violation of the Computer Fraud and Abuse Act

In Count V, Carmicle alleges that Brown Jordan violated the federal Computer Fraud and

---

[6] Brown Jordan's Motion for Summary Judgment cites only Florida law for the proposition that reliance on this misrepresentation would be unreasonable as a matter of law.  *See* DE 86 at 24.  Even if Kentucky law were to apply, however, it would appear that the laws of Kentucky and Florida are similar in this area.  *See United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 470 (Ky. 1999).

Abuse Act ("CFAA") on February 17-18, 2014, by "hacking" into his personal laptop. DE 71 at ¶¶ 59-60, 88. It is a violation of the CFAA to "intentionally access[] a computer without authorization or exceed[] authorized excess, and thereby obtain[] . . . information from any protected computer[.]" 18 U.S.C. § 1030(a)(1)(C). The CFAA provides a private right of action to "[a]ny person who suffers damage or loss by reason of a violation[.]" 18 U.S.C. § 1030(g).

Brown Jordan argues there is no evidence that it accessed Carmicle's personal laptop while the laptop was in Brown Jordan's possession on February 17-18, 2014. *See* DE 86 at 26-27. Carmicle responds that there are disputed issues of material fact as to this count. *See* DE 106 at 19.

On a motion for summary judgment, "[w]hen the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim.'" *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Counties in State of Ala.*, 941 F.2d 1428, 1437-38 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Instead, the moving party simply may 'show[ ]'—that is, point[ ] out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Id.* at 1438 (quoting *Celotex*, 477 U.S. at 323). If, in response, "the nonmoving party fails to 'make a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' *Celotex*, 477 U.S. at 33, . . . the moving party is entitled to summary judgment." *Id.*

Brown Jordan has done more than simply point out an absence of evidence on this claim. Brown Jordan cites the following evidence as affirmatively demonstrating that Carmicle cannot prove an essential element of his claim: that Brown Jordan "intentionally access[ed] [Carmicle's

16

computer . . . and thereby obtain[ed] . . . information" from it.  18 U.S.C. § 1030(a)(1)(C).  It has submitted a sworn statement from Patricia Cooper (BJI's Vice President of Benefits & Risk Programs) that Carmicle's laptop was in her possession on February 17-18, 2014, and she "neither accessed nor attempted to access its contents in any manner."  DE 90-18 at ¶¶ 3-4.  A computer forensic examiner with Digital Mountain examined Carmicle's computer and concluded it was impossible to determine whether any of the computer's files had been accessed on February 17-18, 2014 due to "[t]he failure to forensically preserve this computer."  DE 90-5 at 5.  Specifically, "almost 100% of the computer's 2.5 million files had been 'last accessed' on or after June 5, 2015," thereby overwriting any prior "last accessed" date.  DE 90-5 at 4.

This Digital Mountain expert also addressed Carmicle's testimony that he created "a printout of the activity that occurred on my personal computer on February 17th and 18th of 2014 while it was out of my possession," from an Apple "software program called Console that tracts [sic] every activity."  DE 88-4 at 116-17; *see* DE 88-6 (the printout).  Carmicle opined that this printout showed that Brown Jordan had sought to gain access to the computer because a command indicating that someone had opened the computer laptop lid appeared seven to nine times.  DE 88-4 at 122-23.  He admitted that he did not "know what the rest of these commands [in the printout] mean[.]"  DE 88-4 at 123.  The Digital Mountain examiner, agreeing with a prior forensic examiner, reviewed the printout and concluded it "does not indicate that the laptop was accessed beyond the lid being opened."  DE 90-5 at 5.

Brown Jordan therefore met its initial burden of showing a lack of evidence on this claim; the burden therefore shifted to Carmicle to produce evidence in support.  *See Four Parcels*, 941 F.2d at 1437-38.  In response to this evidence, Carmicle offers only the following.  First, King, Brown Jordan's general counsel, stated his desire to access Carmicle's computer.  DE 106 at 19.

17

Second, the laptop lid "was opened and/or closed multiple times while in Defendant's possession." *Id.* Third, he argues that the Digital Mount examiner "cannot confirm that [the computer's] contents were not accessed[.]" *Id.*

This evidence fails to make a sufficient showing on an essential element of Carmicle's CFAA claim: that Brown Jordan "intentionally access[ed] [Carmicle's computer . . . and thereby obtain[ed] . . . information" from it. 18 U.S.C. § 1030(a)(1)(C). Even if Brown Jordan's general counsel had a desire to access the computer, this does not indicate that Brown Jordan actually did so. Furthermore, merely opening the lid of the laptop computer is insufficient, as it does not indicate that any of the files on the computer were accessed or any information gleaned therefrom. *See* 18 U.S.C. § 1030(a)(1)(C). Finally, while Carmicle seems to imply that the Digital Mountain report is not conclusive, the report actually indicates the examiner's opinion that it *cannot* be determined whether Brown Jordan accessed the files on February 17-18, since the "last access" dates for the computer's files were subsequently overridden. Carmicle suggests no other method by which this information could be gleaned. This is insufficient to meet Carmicle's burden on summary judgment. Accordingly, Brown Jordan's Motion for Summary Judgment is **GRANTED** as to Count V.

## F.  Count VI: Defamation and False Light

In Count VI, Carmicle alleges that, after terminating him, Brown Jordan "uttered false, derogatory, and defamatory remarks about Carmicle to Carmicle's former colleagues at BJS." DE 71 at ¶ 91. He alleges Brown Jordan did this in order to damage his reputation and professional relationships. DE 71 at ¶¶ 90-99. Brown Jordan argues it is entitled to summary judgment because "Carmicle cannot articulate any specific alleged defamatory statement about

18

him published to any third party by the Brown Jordan Parties."  DE 86 at 28-29.

    Brown Jordan cites specific portions of Carmicle's deposition, in which he discusses the defamatory statements.  *See* DE 86 at 28-29; DE 88-4 at 667-94.  In his response, Carmicle asserts that he "has confirmed that he has been advised that Moriarty and/or others have portrayed him negatively in his professional capacity to clients or colleagues on a number of occasions."  DE 106 at 19.  However, Carmicle's response cites no record evidence to contravene or supplement Brown Jordan's.  *See Ray*, 327 F. App'x at 825 (once moving party meets its initial burden, the nonmoving party "must make a sufficient showing on each essentially element of the case for which he has the burden of proof").

    In the deposition testimony cited by Brown Jordan, Carmicle testified that he had heard, second or third-hand, that Brown Jordan Director Gene Moriarty had made negative statements about him.[7]  All of these statements by Moriarty were oral.  *See* DE 88-4 at 674.  Carmicle did not personally hear any of the statements; essentially, he testified that people told him that Moriarty had been meeting with various customers and recounting the circumstances of Carmicle's termination.  *See* DE 88-4 at 677-78, 692.

    Carmicle identified four incidents where Moriarty talked to customers about him after his termination: (1) a meeting attended by Holly Isaacs, Jeanine Huebner, Stacey Spillman, and a fourth person at Home Depot; (2) a meeting with Doug Collier at La-Z-Boy; (3) a conversation with Jim Alt at Sears; and (4) a visit with Bobby at Cabot House.  Carmicle did not know when these meetings or conversations occurred, other than that they were after his termination.  *See* DE 88-4 at 681, 683.  Carmicle did not know specifically what Moriarty said in any of these

---

[7] Carmicle admitted that he was not aware of any negative statements made by Brown Jordan employees Wayne Teetsel, Jason Breaux, Pam Packard, Fred King, or Vincent Tortorici.  *See* DE 88-4 at 677, 679.  Thus, the defamation/false light claim appears to be based solely on statements by Moriarty.

meetings or conversations.  *See* DE 88-4 at 677-78, 687-88, 693.  He testified that Moriarty was "spinning the situation" and conveying that Carmicle "had done something, you know, really, you know, bad or scandalous and that, you know, Gene [Moriarty] had to fix it."  DE 88-4 at 679-80.  Carmicle "was led to believe that the way [Moriarty] was delivering the message was that - - he carried the lawsuit with him . . . and that, in talking to people about the lawsuit, he would always leave them with - - the impression - - with 'There's a whole lot more,' like that 'This isn't it.'"  DE 88-4 at 682.  Carmicle did not know if any of the listeners' views of him changed as a result of the statements, or whether his reputation had been harmed.  *See* DE 88-4 at 685, 688, 690-94.

Carmicle testified that he heard about Moriarty's statements at the Home Depot meeting from Holly Isaacs.  DE 88-4 at 681, 684.  However, Holly Isaacs herself denied this: she testified she had never told Carmicle that she knew of or had heard Moriarty portraying Carmicle's termination in a negative way to customers and clients.  DE 88-62 at 43-44.  She did not recall Moriarty making these types of representations to anyone at Home Depot.  DE 88-62 at 44-45.  She *did* recall attending the Home Depot meeting with Moriarty, Jeanine Heubner, and Stacy Spellman after Carmicle's termination.  DE 88-62 at 78-79.  But she testified that, as to Carmicle, Moriarty said "[j]ust that he had parted ways and we were moving on business as usual"; she denied that Moriarty mentioned the lawsuit or made any negative statements about Carmicle at the Home Depot meeting.  DE 88-62 at 79-80, 84-85.

Based on this uncontroverted evidence—which Carmicle has made no effort to refute or supplement—the Court finds that Carmicle has failed to provide any evidence identifying the allegedly defamatory statements with sufficient particularly.  *See Razner v. Wellington Regional*

*Med. Ctr., Inc.*, 837 So. 2d 437, 442 (Fla. Dist. Ct. App. 2002) ("When bringing a cause of action for defamation based on oral statements, a plaintiff need not set out the defamatory language verbatim; it is sufficient that the plaintiff set out the substance of the spoken words with sufficient particularity to enable the court to determine whether the publication was defamatory.").  Carmicle has produced no evidence that the statements were actionable because, due to the lack of specificity, it cannot be determined whether the statements were true statements of fact or merely Moriarty's opinion.  *See Razner*, 837 So. 2d at 442 (statements that are true or opinion are not defamatory); *Smith v. Martin*, 331 S.W.3d 637, 640 (Ky. Ct. App. 2011) ("A claim of defamation may be defeated by establishing the truth of the matter asserted which is an absolute defense."); *Loftus v. Nazari*, 21 F. Supp. 3d 849, 853 (E.D. Ky. 2014) (statements of pure opinion are not defamatory).

Insofar as Count VI brings a claim for "false light," Brown Jordan is also entitled to summary judgment under either Florida or Kentucky law.  Florida does not recognize a separate cause of action for "false light." *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1113-14 (Fla. 2008) (noting "the significant and substantial overlap between false light and defamation"). Kentucky does recognize claims for "false light" based on "publicity that unreasonably places another in a false light before the public." *Hays v. Clear Channel Commc'ns, Inc.*, No. 2005-CA-001490, 2006 WL 3109132, at *5 (Ky. Ct. App. Nov. 3, 2006).  However, as with a claim for defamation, true statements and statements of opinion are not actionable.  *Id.*; *see also Dietz v. Bolton*, No. 2011-CA-001899, 2013 WL 1919562 (Ky. Ct. App. May 10, 2013) (to sustain an action for false light plaintiff must be "placed before the public in a *false* position") (emphasis added).  Thus, the false light claim fails under Kentucky law for the same reasons as the

21

defamation claim: because the statements in questions are not identified with sufficient particularity, Carmicle has failed to show that they are actionable. Accordingly, Brown Jordan's Motion for Summary Judgment is **GRANTED** as to Count VI.

### G. Counts VIII-X: Breach of Fiduciary Duties and Vicarious Liability

Brown Jordan argues that Carmicle's breach of fiduciary duty counts, Count VIII and Count IX, and Carmicle's vicarious liability count, Count X, all fail under Delaware law. Carmicle does not dispute that Delaware law applies,[8] and his response to Brown Jordan's Motion for Summary Judgment is deficient as to these counts. Carmicle devotes a single paragraph to Brown Jordan's arguments wherein Carmicle fails to make a single citation to the record or a single citation to legal authority. Brown Jordan is therefore entitled to summary judgment on Carmicle's breach of fiduciary duty counts and vicarious liability count on this basis alone. Although Carmicle asserts that "there are significant issues of material fact" that preclude entry of summary judgment, Carmicle provides no citations to the record. DE 106 at 20. Carmicle therefore puts the burden onto the Court to "undertake an expedition . . . with the hope of stumbling upon some portion [of the record] that merely 'suggests' a disputed issue of fact." *Henry v. City of Tallahassee*, 216 F. Supp. 2d 1299, 1311-12 (N.D. Fla. 2002). This the Court will not do.

---

[8] Even if Carmicle were to object to the application of Delaware law, Brown Jordan has provided evidence that the only entity in which Carmicle held shares was BJI Holdings, LLC, a Delaware limited liability company. *See* DE 88-7 at 9, 14-60629 DE 20-1 at 43. Carmicle cites to no evidence that he directly held shares or membership interests in any other business entity involved in this case. Instead, Carmicle appears to assert standing for officers' and directors' breach of fiduciary at Brown Jordan International, Inc., because BJI Holdings, LLC, in which Carmicle held stock, owned Brown Jordan International. *See* DE 88-7 at 9.

Even if the Court considers Carmicle's claims (to the extent possible) on the merits, Carmicle's claims still fail.  Carmicle's breach of fiduciary duty claims are brought on his *own* behalf, not on behalf of all stockholders:

> As a result of Defendants' breach of the fiduciary duty they owed Carmicle, **Carmicle has suffered** significant economic loss, and emotional distress.
>
> As a result of Defendants' breach of their fiduciary duty to Carmicle, Defendants **are liable to Carmicle** for compensatory and punitive damages, all in an amount to be determined by the jury.
>
> . . .
>
> As a result of Defendants Moriarty, Teetsel, Breaux, and Packard's breach of the fiduciary duty they owed Carmicle, **Carmicle has suffered** significant economic loss, and emotional distress.
>
> As a result of the Defendants Moriarty, Teetsel, Breaux, and Packard's breach of their fiduciary duty to Carmicle, Defendants **are liable to Carmicle** for compensatory and punitive damages, all in an amount to be determined by the jury.

DE 71 ¶¶ 111-12, 116-17 (emphasis added).  Carmicle's claims therefore do not seek relief for all stockholders, but for Carmicle personally.  In order for Carmicle's breach of fiduciary duty counts to be cognizable under Delaware law, his "claimed direct injury must be independent of any alleged injury to the corporation.  The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail *without showing an injury to the corporation*."  *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004) (emphasis added).

Carmicle has cited no evidence that he received a direct injury that was *independent* of any injury to the corporation.  Indeed, Carmicle's own argument belies any such showing because Carmicle asserts standing for his fiduciary duty counts by virtue of the fact "he was a minority shareholder" that was owed fiduciary duties which, by implication, would mean that

other shareholders were owed the same duties and were similarly affected.[9]  DE 106 at 19.
Similarly, the essence of Carmicle's allegations—that corporate officers were preparing to
improperly purchase a portion of the company for themselves—would clearly result in all
stockholders, not just Carmicle, being damaged.  Finally, Carmicle cites to no evidence that the
alleged breaches of fiduciary duty actually damaged Brown Jordan investors.  By contrast,
Brown Jordan has cited to evidence that Brown Jordan stockholders suffered no damages as a
result of the actions that are alleged to have been wrongful in this case: "At one point, Mr.
Selman was pushing Mr. Moriarty to get a bid on behalf of management, which never actually
occurred."  DE 88-7 at 114-15.

In addition to the foregoing, Brown Jordan cites to *In re Digex Inc. Shareholders
Litigation*, 789 A.2d 1176, 1189 (Del. Ch. 2000), which stands for the proposition that a claim
based upon a usurped corporate opportunity—which is the gravamen of what is alleged in this
case—belongs solely to the corporation as a derivative claim; it may not be brought as an
individual action.  In response to this authority, Carmicle is silent.

Brown Jordan cites to *Arnold v. Society for Savings Bancorp, Inc.*, 678 A.2d 533, 540
(Del. 1996), for the proposition that Carmicle's vicarious liability count, Count X, fails because
under Delaware law a corporation may not become vicariously liable for a breach of fiduciary
duty:

> It would be an analytical anomaly, therefore, to treat corporate directors as *agents*
> of the corporation when they are acting as *fiduciaries* of the stockholders in
> managing the business and affairs of the corporation.  Holding the corporation
> vicariously liable for the directors' breach of a fiduciary duty 'would be flatly
> inconsistent with the rationale of vicarious liability since it would shift the cost of

---

[9] Carmicle further appears to concede that damages accrued to the company as a whole by alleging Defendants'
activities were "to the detriment of the Company owners."  DE 71 ¶ 110.

the directors' breach from the directors to the corporation and hence to the shareholders, the class harmed by the breach."

(quoting *Radol v. Thomas*, 772 F.2d 244, 258-59 (6th Cir. 1985)).  In response to this authority, Carmicle is silent.

For all of the reasons set forth above, Brown Jordan's Motion for Summary Judgment is **GRANTED** as to Count VIII, Count IX, and Count X.

## V.    CONCLUSION

Accordingly, for all of the reasons previously stated it is **ORDERED AND ADJUDGED** that Brown Jordan's Motion for Summary Judgment in case 0:14-CV-61415 at docket entry 86 is **GRANTED IN PART AND DENIED IN PART**.  The Motion is **GRANTED** as to: Count I (wrongful termination); Count II (wrongful discharge in violation of the parties' code of conduct); Count V (Computer Fraud and Abuse Act); Count VI (defamation and false light); Counts VIII and IX (breach of fiduciary duties); and Count X (vicarious liability).  The Motion is **DENIED** as to: Count III (fraudulent misrepresentation) and Counts IV and XI (breach of contract).

**DONE and ORDERED** in Chambers, Fort Pierce, Florida, this 19th day of October, 2015.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record